**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| **TIMOTHY P. MITCHELL,**<br>**Plaintiff,**<br>**v.**<br>**TRUIST BANK INC.,**<br>**Defendant.** | **CIVIL NO. 6:26-cv-13-KKC-EBA**<br><br>**ORDER & OPINION** |

* * * * * *

This matter is before the Court on motions for summary judgment made by Plaintiff Timothy P. Mitchell ("Mitchell") and Defendant Truist Bank Inc. ("Truist"). (R. 29, 34.) The motions are fully briefed and ripe for review.

## I. BACKGROUND

In short, this case concerns Truist's failure to release two judgment liens on real property owned by Mitchell.

Truist held two judgments liens against Mitchell for non-payment of credit card loans. One was filed against him personally ("the Mitchell Judgement Lien") , which was recorded in **Lis Pendens Book 85, Page 552** on July 27, 2016, at the Floyd County Clerk's Office. (R. 29-1 at 4; R. 34-1 at 3.) The other was filed against Mitchell's business, Masonry Builders of KY, Inc. ("Masonry Builders"). It was recorded in in **Lis Pendens Book 91, Page 8** on March 19, 2018, in the Floyd County Clerk's Office. (R. 29-1 at 4; R. 34-1 at 3.)

On June 25, 2019, Mitchel and his bank reached an agreement to settle both judgments. (R. 29-3 at 19.) On July 1, 2019, Mitchell satisfied the payment. (R. 29-1 at 4; R. 34-1 at 3.)

On or around January 21, 2022, over two years after satisfying his end of the settlement, Mitchell discovered that the Judgment Liens had not been released. (*Id.*) He promptly notified Truist via email. (R. 29-3 at 19.) In response, on February 7, 2022, Truist issued two Deeds of Release, both of which incorrectly identified the parties to be released. The Deed of Release recorded in the Floyd County Clerk's Office at **Book 102, Page 224,** released Mitchell from the Masonry Builders lien, which was recorded in **Book 91**. (R. 29-3 at 21). Similarly, a Deed of Release recorded in the Clerk's Office at **Book 102, Page 227** incorrectly named Masonry Builders as the party released from the Mitchell Judgment Lien recorded at **Book 85**. (*Id.* at 22.) In other words, the incorrect party was listed on both Deeds of Release.

Later, Mitchell discovered that Judgment Liens were still pending as to him and his company. On November 21, 2023, he sent a certified letter to Michael McGuire, CFO of Truist, pursuant to KRS 382.365. In his letter, Mitchell demanded that Truist release the following Judgment Liens:

> Judgment Lien (Judgment Debtor: Masonry builders of Ky Inc) Recorded [sic] March 19 [sic] 2018 In [sic] Floyd County Kentucky Clerk's Office, **Book 91 Page 8**, and Judgment Lien (Judgment Debtor Timothy Mitchell) Recorded [sic] in Floyd County Clerk's Office dated July 27 [sic] 2016, **Book 85 Page 552**.

(R. 29-2 at 15 (Nardi Decl.) (bold added).) Notably, , in his certified letter, Mitchell updated contact information, including his mailing address and telephone number.. (*Id.*) Truist received Mitchell's certified letter on November 24, 2023.

On November 29, 2023, Truist's Client Resolution and Client Advocacy Teams reviewed Mitchell's letter and telephoned him at a telephone number listed in its files rather than the updated number in his certified letter. The Truist representative left a voicemail

acknowledging the receipt of Mitchell's letter and requesting a return call. (Nardi Decl., ¶13).) (*Id.* at 4, 17.) The voicemail included a call back number. (*Id.*)

At or about the same time, Truist "reviewed its files for accounts connected to Mitchell and Masonry Builders and located a BB&T business loan account ending in 2504-1001," which was related to a separate automobile loan for a 2011 Jeep (the "Jeep Loan") (*Id.* (Nardi Decl., ¶14); R 29-2 at 20.) BB&T made the Jeep Loan to Masonry Builders and Mitchell on December 31, 2010, for $32,343.00. (R. 29-2 at 17.) Truist reviewed the Title Lien Statement, a Sales Finance Charge Off Request Form dated April 21, 2016, and an unrecorded copy of a Termination Statement dated February 4, 2017 (collectively, the "Jeep Loan Documents"). (*Id.* at 4.) After reviewing the Jeep Loan Documents, Truist determined that the Jeep Loan had an outstanding balance of $121.39. (*Id.*) Because there was an unpaid balance, the Jeep Loan was still in "Charge Off" status. (*Id.*) Truist incorrectly concluded that Mitchell's certified letter concerned the Jeep Loan.

On or around December 1, 2023, Truist requested approval to release the Jeep Loan collateral. (*Id.*) The request was approved, and a Title Lien Termination Statement was executed by Truist on December 12, 2023. (R. 29-2 at 24.) Truist sent the Title Lien Termination Statement to Mitchell to fully execute and record. (*Id.* at 5.) But the letter was sent to Mitchell's physical address instead of the return PO Box address listed on his certified letter. (*See* R. 29-2 at 26; R. 32 at 19.)

On December 13, 2023, Truist again attempted to contact Mitchell at a telephone number from its files rather than the updated phone number provided in the certified letter. (R. 29-2, at 18.) When Mitchell did not answer, Truist left a voicemail with a call back number and requested a return call. (*Id.*) The next day, Truist called the same number and left another voicemail with the same information. (*Id.*) Truist also sent a letter to Mitchell's

home address from its files rather than the PO Box mailing address provided in Mitchell's certified correspondence. (*Id.* at 26.) The letter referenced Truist's multiple attempts to reach Mitchell in response to "concerns that were forwarded to the Client Advocacy team," and listed the Truist Account Number and Case Number associated with the Jeep Loan. (*Id.*)

Truist never attempted to reach Mitchell using the contact information in the certified letter. Consequently, Truist did not receive responses from Mitchell because it didn't use the updated contact information.

On May 15, 2024, Mitchell's lawyer contacted Truist's counsel via email. (R. 29-3 at 24.) The email referenced both the Mitchell Judgment Lien and the Masonry Builders Judgment Lien. (*Id.*) Mitchell's counsel explained that the Masonry Builders Judgment Lien had been released against Mitchell, but that the Mitchell Judgment Lien "d[id] not appear to have been released." (*Id.*)

On May 21, 2024, Truist's counsel responded to counsel's email and attached a copy of the recorded Deed of Release of Judgment Lien that listed Mitchell as the party being released from the Masonry Builders Judgment Lien. (*Id.* at 26) The email did not include a recorded Deed of Release of Judgment Lien as to the Mitchell Judgment Lien. Neither Mitchell nor his counsel responded to Truist's email.

On May 29, 2024, Mitchell filed the instant Complaint against Truist in Floyd Circuit Court, alleging that Truist failed to release the Mitchell Judgment Lien. (R. 1.) The matter was later removed to this Court. (*Id.*)

An Amended Deed of Release of Judgment Lien was recorded for each of the Judgment Liens on July 10, 2024, stating that both Judgment Liens had been settled in full. (R. 29-3 at 28-31.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to a material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Then, the opposing party must demonstrate that a genuine issue of material fact exists. *Id.* at 3235.

To overcome a motion for summary judgment, it is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (quoting *Celotex Corp*, 466 U.S. att 317) (internal quotation marks omitted)).

## III. ANALYSIS

The parties agree that there is no genuine issue of material fact and that the case is ripe for the Court to issue an opinion as a matter of law. (*See* R. 34-1 at 5.) Accordingly, summary judgment is the appropriate means for resolving this matter.

**A. Mitchell's KRS 382.365 Claim**

Mitchell asserts that Truist is liable to him, pursuant to KRS 382.365(4), for certain daily penalties that began accruing from the 15th day after Truist received his certified letter. That statute provides, in relevant part:

> If the court finds that the lien holder received **written notice** of its failure to release and **lacked good cause** for not releasing the lien, the lien holder shall be liable to the owner of the real property or to a party with an interest in the real property in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exists. This written notice shall be properly addressed and sent by certified mail or delivered in person to the final lien holder or final assignee . . . .

KRS 382.365(4) (bold added). The penalties increase the longer the lienholder waits without good cause to release the lien after receiving the owner's letter:

> A lien holder that continues to fail to release a satisfied real estate lien, without good cause, within forty-five (45) days from the date of written notice shall be liable to the owner of the real property or to a party with an interest in the real property for an additional four hundred dollars ($400) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice, for a total of five hundred dollars ($500) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice.

KRS 382.365(5). The lienholder is also liable for reasonable attorney's fees. *Id.*

Here, the Court previously determined that Mitchell's November 24, 2023, certified letter properly notified Truist of its failure to release the liens. (R. 13 at 5.) Accordingly, the

question becomes whether Truist had good cause for failing to release the liens once it received Mitchell's certified letter.

The Court "initially determines what constitutes 'good cause' [under KRS 382.365] as a matter of law." *Hall v. Mortgage Elec. Registration Sys. Inc.*, 396 S.W.3d 301, 305-06 (Ky. 2012). Good cause is "determined by the totality of the circumstances." *Id.* at 305. Several occurrences are relevant to Truist's failure to release the Judgment Liens. The Court will consider each in turn.

**1. Truist's Actions Prior to Receiving Mitchell's Certified Letter**

Mitchell asserts that good cause does not exist because Truist did not begin the process of releasing either the Mitchell Lien or Masonry Builders Lien until January 2022, more than two and a half years after they were satisfied in July 2019. Mitchell asserts that Truist's actions do not satisfy the General Assembly's purpose in enacting KRS 382.365 to ensure "prompt action by lienholders after satisfaction of the underlying debt." (R. 32 at 16 (internal citations omitted).)

While this may be true, the plain language of the statute provides that a Court cannot consider Truist's delay prior to receiving Mitchell's November 21, 2023, letter notifying Truist of its failure to release a lien. *See* KRS 382.365(4).

**2. Truist's Actions Following Receipt of Mitchell's Certified Letter**

On November 21, 2023, Mitchell sent Truist a certified letter pursuant to KRS 382.365. In the letter, Mitchell notified Truist that it had release the wrong parties as to both judgment liens. The certified letter identified the liens by Lis Pendens Book and Page Number. While Mitchell's certified letter did not include the account number or case number associated with either of the Lis Pendens notices, it made no reference to any lien associated with the Jeep Loan. Truist mistakenly concluded the Mitchell Notice referred to the Jeep Loan.

Truist did not attempt to reach Mitchell at the telephone number and address provided in the certified letter. Instead, Truist` used an address and phone number identified in its files for the Jeep Loan, which was still Mitchell's physical address. (*See* R. 36 at 3 (citations omitted).) Nevertheless, Mitchell did not answer any of Truist's calls or letters.

*First*, given the information provided in Mitchell's certified letter, the Court finds that it was not reasonable for Truist to believe the Notice concerning the release of a title lien related to the Jeep Loan. The certified letter clearly identified two judgment lines by specific Lis Pendens information and the correct judgment debtor associated with each of the Judgment Liens. Although the Mitchell's certified letter did not include the account number or case number associated with the Judgment Liens, the information it provided was nevertheless sufficient to properly identify the liens or, at the very least, make clear that the title lien related to the Jeep Loan was not the subject of the Notice. Accordingly, the Court finds that Truist's misunderstanding does not constitute good cause for failing to release the Judgment Liens.

*Second*, Truist asserts that it had good cause for its failure to release the Judgment Liens because Mitchell never responded to the voicemails or letters it sent in December 2023. Mitchell argues, on the other hand, that Truist should have contacted Mitchell through the contact information provided in his certified letter. If Truist's attempts to contact Mitchell had been successful, the parties may have cleared up the confusion regarding the Judgment Liens. Truist has failed to show good cause not only for the confusion over the Judgment Lien releases, but also its failure to fully comprehend and adequately respond to Mitchell's certified letter. Accordingly, the Court finds that Truist's attempts to contact Mitchell following the receipt of the Mitchell Notice do not constitute good cause for failing to release the Judgment Liens.

**3. Mitchell's Delay in Filing his Complaint**

After sending his certified letter, Mitchell underwent knee surgery in late 2023 and experienced medical complications in early 2024. (R. 32 at 21.) He did not communicate with Truist while recovering from the surgery. On May 15, 2024, Mitchell's lawyer contacted Truist's counsel via email. (R. 29-3 at 24.) The email referenced both the Mitchell Judgment Lien and the Masonry Builders Judgment Lien. (*Id.*) Mitchell's counsel explained that the Masonry Builders Judgment Lien had been released against Mitchell, but that the Mitchell Judgment Lien "d[id] not appear to have been released." (*Id.*) Mitchell's attorney requested a copy of the recorded release of the Mitchell Judgment Lien against Mitchell. (*Id.*)

On May 21, 2024, Truist's counsel responded to Mitchell's email with a copy of the recorded release of the *Masonry Builders* Judgment Lien against Mitchell. (*Id.* at 26), but did not provide a copy of the release of the *Mitchell* Judgment Lien. The Mitchell Judgment Lien was still not released against Mitchell. Rather than responding to the email, Mitchell filed the instant Complaint against Truist. (R. 1.)

On July 10, 2024, an Amended Deed of Release of Judgment Lien was recorded for both Judgment Liens. (R. 29-3 at 28–31.)

Although the Complaint was filed approximately six months after Truist received Mitchell's certified letter, it was filed approximately one week after Mitchell received Truist's response to his counsel's May 2024 email. Considering Mitchell's surgery, complications from surgery, and the May 2024 emails, the Court does not find that Mitchell was waiting to file a Complaint simply to acquire more damages.

Accordingly, based upon a totality of the circumstances, the Court does not find "good cause" as a matter of law for Truist's failure to release the lien from the date it received the notice required under the statute (November 24, 2023) to July 10, 2024, the date the correct Deed of Release was recorded. The KRS 382.365 requirements have been met: Mitchell satisfied the underlying debt on July 1, 2019; Mitchell provided written notice to Truist of its

failure to release the Judgment Liens on November 24, 2023; and Truist lacked good cause for failing to release the lien once it received his certified notice of the error.

Accordingly, Mitchell is entitled to summary judgment as a matter of law as to his KRS 382.365 claim. It appears that the amount of damages is the only remaining issue related to Mitchell's KRS 382.365 claim. Mitchell may file a motion requesting a specific amount of statutory damages, if he wishes to pursue them. Truist may respond and Mitchell may reply pursuant to the Local Rules.

**B. Mitchell's Claims for "Unauthorized Cloud of Title" and Punitive Damages**

In Truist's motion for summary judgment, Truist asserts that Mitchell's claims based on an alleged "unauthorized cloud of title" and punitive damages should fail as a matter of law. Mitchell does not respond to either argument. As such, this Court finds that the claims are waived. *See Ctr. For Biological Diversity v. Rural Utils. Serv.*, No. 5:08-cv-292-JMH, 2009 U.S. Dist. LEXIS 98579, *9 (E.D. Ky. Oct. 2, 2009) (citing *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived and grant the motion."). Accordingly, the Court will grant Truist's motion for summary judgment as to both the "unauthorized cloud of title" claim and the punitive damages claim.

## IV. CONCLUSION

For the reasons stated above, the Court **ORDERS** the following:

(1) Truist's Motion for Summary Judgment (R. 29) is GRANTED in part, DENIED in part, as follows:

  a. GRANTED as to Mitchell's claim for "Unauthorized Cloud of Title;"

  b. GRANTED as to Mitchell's claim for Punitive Damages;

  c. DENIED as to all other claims;

(2) Mitchell's Motion for Summary Judgment (R. 34) is GRANTED;

(3) Mitchell may file a motion for damages by **on or before October 22, 2026.** The motion must specify the claim for damages in compliance with KRS 382.365. Truist may file a response, and Mitchell may file a reply pursuant to the Local Rules.

September 28, 2026.

**Signed By:**

***Karen K. Caldwell*** KKC

**United States District Judge**